HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAFEAIR, INC., a Washington corporation,

            Plaintiff,

            v.

COPA AIRLINES, a Panamanian
corporation,

            Defendant.

Case No.  CV04-5311 RBL

ORDER GRANTING
PLAINTIFF'S MOTION FOR
PARTIAL  SUMMARY JUDGMENT

I.    **Introduction**.

       This matter comes before the Court on the Plaintiff's Motion for Partial Summary Judgment.  [Dkt. #27].  This case arises from an alleged infringement by Copa Airlines (the "Defendant" or "Copa") of five copyrights owned by Safeair, Inc. (the "Plaintiff" or "Safeair").  Copa Airlines is a Panamanian airline with its headquarters located in Panama.  Beginning in the 1980's, Copa began providing flights to various destinations within the United States, and now provides service to Miami, Orlando, New York, and Los Angeles.  On April 8, 1999, Copa took delivery of its first Boeing 737-700 airplane.  Copa did not have a passenger safety card for this type of aircraft.  Copa obtained and used the passenger safety card created by Safeair for Continental Airlines' Boeing 737-700 airplanes (the "Continental Card").  With the exception of

1  the airline name, Copa reproduced the Continental Card in its entirety.  Copa did not contact Safeair to

2  request permission to use its copyrighted work.  In 2003, Copa removed the middle panel that contained

3  illustrations of floatation devices, along with Safeair's copyright notice, from the safety card it had been

4  using since 1999.  Safeair first published the Continental Card in 1998, and registered it with the U.S.

5  Copyright Office on September 12, 2002 - VA 1-218-441 ("441").  On May 20, 1983, H. Beau Altman

6  Corp. ("Altman") registered copyright TX 1-173-818 ("818").  Then, on December 13, 1984, Altman

7  registered copyright TX 1-472-401 ("401").  On April 17, 1989, Altman registered copyright TX 2-599-

8  417 ("417").  And on April 25, 1989, Altman registered copyright TX 2-556-966 ("966").  All of the rights

9  to the aforementioned copyrights were transferred by Altman to Greg Miller, owner of Safeair, on January

10  25, 1990.  Safeair filed its original complaint for copyright infringement in May 2004.

11  **II.**    **Discussion**.

12      **A.**    **Summary Judgment Standard**.

13      Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-

14  moving party, there is no genuine issue of material fact which would preclude summary judgment as a

15  matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the

16  non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex*

17  *Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of

18  the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

19  1221 (9th Cir. 1995).  Particularly, in copyright infringement cases the plaintiff must establish (i) ownership

20  of the copyrights, (ii) copying of an expression protected by those copyrights, and (iii) substantial similarity

21  between the copyrighted work and the defendant's work.  *Triad Systems Corp., v. Southeastern Express*

22  *Co.*, 64 F.3d 1330, 1335 (9th Cir. 1995); *see also Litchfield v. Spielberg*, 736 F.2d 1352, 1355 (9th Cir.

23  1983).  In determining whether two works are substantially similar the Court utilizes a two-part "extrinsic"

24  and "intrinsic" test.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002).  The "extrinsic

25  test" is an objective comparison of specific expressive elements.  *Id.*  And the "intrinsic test" is a

26  "subjective comparison that focuses on 'whether the ordinary, reasonable audience' would find the works

27  substantially similar in the 'total concept and feel of the works.'" *Id.*  The Court must also make an inquiry

28  into whether the protectible elements, standing alone, are substantially similar.  *Id.*

**B.     Safeair is the Owner of the Copyrights in the Safety Cards**.

Safeair is the record owner of Copyright Registration No. VA 1-218-441, the Continental Card. Moreover, Safeair lawfully obtained and is the owner of copyright registrations '818, '401, '417, and '966. These cards were originally registered by Altman and were sold to Safeair in 1990.  Pursuant to 17 U.S.C. § 410(c) the certificate of registration constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  On October 25, 2004, Safeair filed a transfer of ownership certificate with the U.S. Copyright Office, reflecting the 1990 transfer of copyrights from Altman to Safeair. Significantly, Copa does not dispute that Safeair is the owner of the copyright registrations to the Continental Card and Altman copyrights.  *See* Defendant's Opposition to Safeair's Motion for Partial Summary Judgment, p. 6, fn. 19 [Dkt. #32].

**C.     Copa Has Directly Copied the Expression Protected By Safeair's Copyrights.**

As noted by the Ninth Circuit in *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d 204, 206 (9th Cir. 1988), "there is seldom any direct evidence of copying . . . [t]herefore, copying may be established instead by circumstantial evidence of (1) the defendant's access to the copyrighted work prior to defendant's creation of its work, and (2) the substantial similarity of both the general ideas and expression between the copyrighted work and the defendant's work."  Here, however, there is unquestionably such "direct evidence of copying."  In fact, Copa admits that it has "reproduced" and infringed Safeair's copyrighted safety cards.  *See* Defendant's Motion for Summary Judgment, p. 2, line 20 [Dkt. #34].  This establishes another crucial point: once direct evidence of copying has been demonstrated, this necessarily establishes the requisite substantial similarity.  Indeed, it appears to the Court that the "total concept and feel of the cards" of Copa are the same as the copyrighted Altman drawings and the Continental Card.  *Cavalier v. Random House* dictates that we apply the "extrinsic test" and make an objective comparison of specific expressive elements.  Here, the persons depicted in the artwork, conveying the messages of "how to use the floatation cushions," "how someone should release the emergency exit," "how to put on a life jacket," and "how to put on the safety belt and remove the seat cushion in the case of a water landing," are substantially similar to the Altman depictions, and the derivative Continental Card.  The striking similarity between these cards is recognizable even to an ordinary observer.  For instance, for each of the Altman drawings incorporated in the Continental Card, the Copa card appears to have merely changed the hair

1    color from black to white or vice versa.  This is much more than incidental copying, it is direct.

2         In *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106 (9th Cir. 1970), the Ninth Circuit

3    considered a scheme whereby the Defendant accessed the Plaintiff's greeting cards and proceeded to make

4    similar cards for sale under the Defendant's label.  The Court held that the "marked similarity" between the

5    two cards showed that the Defendant's cards were, in fact, copied from the Plaintiff's cards.  *Id.* at 1111.

6    Certainly, here, there is also such "marked similarity" between the Altman depictions and the Copa cards.

7    Thus, just as the Defendant's cards in *Roth Greeting Cards*, when "considered as combined compositions

8    of art and text," were found to have infringed upon the Plaintiff's copyright, so too do Copa's cards

9    infringe upon Safeair's copyrights in the Altman copyrights and the Continental Card.

10        *Cavalier v. Random House* also directs that this Court apply the "intrinsic test" of substantial

11   similarity.  As stated above, with the exception of minor variations in color, Copa's safety card is virtually

12   indistinguishable from the Altman drawings and the Continental Card.  As such, the "intrinsic test" is also

13   satisfied here.

14        **D.    Copa Violated Safeair's Right to Display Under 17 U.S.C. § 106(5)**.

15        Among the bundle of rights secured by the 1976 Copyright Act is the right to "display the

16   copyrighted work publicly."  17 U.S.C. § 106(5).  The term "display" is defined in Section 101 of the

17   Copyright Act as "to show a copy of [the work,] either directly or by means of a film . . ."  Furthermore,

18   the term "publicly" is defined in the same section as "to perform or display [a work] at a place open to the

19   public or at any place where a substantial number of persons outside of a normal circle of family and its

20   social acquaintances is gathered."  17 U.S.C. § 101.  Copa acknowledges that it displayed Safeair's safety

21   card.  *See* Defendant's Motion for Summary Judgment, p. 5, fn. 17, p. 8, line 23-24 [Dkt. #34].  Indeed,

22   federal aviation regulations require Copa to have on-board safety cards "in the aircraft in locations

23   convenient for the use of each passenger."  14 C.F.R. § 135.117(e).  Thus, Copa's "display" of the printed

24   safety cards in the seat back of passenger seats on its airplanes is consistent with the definition under

25   Section 101 of the Copyright Act.  Similarly, Copa "publicly" displayed its infringing safety cards to the

26   passengers on its Boeing 737-700 each time a Copa representative would take the safety card out of the

27   seat back pocket and show it to the passengers.

28        The courts recent decisions in this area have established that the Copyright Act does not apply

1    extraterritorially.  *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1094 (9th Cir.

2    1994); *see also Los Angeles News Service v. Reuters Television International, Ltd.*, 149 F.3d 987, 990

3    (9th Cir. 1998).  Yet, at the same time, the courts have found that "[f]or the Act to apply, at least one

4    alleged infringement must be completed entirely within the United States."  *Id.*  Since Copa has routinely

5    been providing service to destinations within the United States, including Miami, Orlando, New York, and

6    Los Angeles, since the mid-1980's it has availed itself of, and is subject to the laws of this country.

7    Consequently, the infringement here occurred within the boundaries of the United States, and properly

8    subjects Copa to the jurisdiction of this Court.

9          **E.      Copa Willfully Infringed Upon Safeair's Copyrights**.

10         The Plaintiff contends that a finding that Copa "willfully" infringed upon its copyrights is

11   appropriate.  The Copyright Act does not explicitly define "willful."  However, this term can be

12   characterized as acting with knowledge of the infringement.  In *Wildlife Express Corp. v. Carol Wright*

13   *Sales, Inc*., 18 F.3d 502, 511 (7th Cir. 1994), for example, the Court determined that a finding of

14   willfulness is justified "if the infringer knows that its conduct is an infringement or if the infringer has acted

15   in reckless disregard of the copyright owner's right."  The Court further noted that "[e]vidence that notice

16   had been accorded to the alleged infringer before the specific acts found to have constituted infringement

17   occurred is perhaps the most persuasive evidence of willfulness."  *Id.*  Because Copa admittedly

18   "reproduced" and used Safeair's copyrighted safety card, which Safeair had licensed only to Continental

19   Airlines, without the consent of Safeair, it "willfully" infringed upon Safeair's copyrights.  This

20   determination is especially appropriate because the infringing card bore the copyright notice of Safeair.

21   Moreover, in 2003, instead of terminating its use of the Continental Card and developing its own, Copa

22   simply decided to remove the portion of the card that contained the Safeair copyright notice.  Then, when

23   Copa was notified of its infringement in May 2004, it nevertheless continued to manufacture and use the

24   copyrighted materials until December 2004.

25         Copa's argument that it is an innocent infringer is not persuasive.  When a valid notice appears on

26   published copies to which the defendant in an infringement suit had access, then no weight is given to the

27   defendant's interposition of an innocent infringer defense.  *See* 3 *Nimmer on Copyright* § 14.04(B)(2)(a).

28   As such, this Court finds that Copa's conduct in ignoring the Safeair copyrights was unreasonable and

willful.  The Plaintiff's Motion for Partial Summary Judgment on the issues of copyright infringement and "willfullness" is hereby GRANTED.  The parties are directed to complete their obligations under CR 39.1.

IT IS SO ORDERED.

DATED this 3rd day of January, 2006.


RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE